1 | SUE CAMPBELL
Attorney at Law, Bar Number 98728
2 | 1155 North First Street, Suite 101
San Jose, California 95112
3 | (408) 277-0648

4 | Attorneys for Plaintiffs

ORIGINAL
FILED

07 FEB 28 PM 1:31

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
N. DIST. OF CA S.J.

E-FILING
ADR

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | JACK BUCKHORN AND ANISA M.
THOMSEN AS TRUSTEES OF THE
11 | REDWOOD EMPIRE ELECTRICAL
WORKERS HEALTH AND WELFARE
12 | TRUST FUND, REDWOOD EMPIRE
ELECTRICAL WORKERS PENSION
13 | TRUST FUND,

14 |                      Plaintiffs,

15 | vs.

16 | PETALUMA ELECTRIC, INC.,
a California Corporation,

17

18 |                      Defendant.

CASE NO.:

C 07   01191   RMW
HRL

COMPLAINT FOR MONEY
ON A BREACH OF
COLLECTIVE
BARGAINING AGREEMENT
VIOLATION OF E.R.I.S.A.
AND FOR AN
INJUNCTION

19 |     COME NOW Plaintiffs, by their attorney, Sue Campbell, and allege and show to the

20 | Court as follows:

21 |     1. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. Sections 185, 1132.

22 |     2.   Plaintiffs DOUG LUNG and BOB TRAGNI are trustees and fiduciaries of

23 | REDWOOD EMPIRE ELECTRICAL WORKERS HEALTH AND WELFARE TRUST

24 | FUND, REDWOOD EMPIRE ELECTRICAL WORKERS PENSION TRUST FUND.

25 |     3. The REDWOOD EMPIRE ELECTRICAL WORKERS HEALTH AND WELFARE

26 | TRUST FUND, REDWOOD EMPIRE ELECTRICAL WORKERS PENSION TRUST FUND,

27 | hereinafter "Funds", are Taft-Hartley funds as defined at 29 U.S.C. Section 186 and "employee

28 | pension benefit plans" as defined at 29 U.S.C. Section 1002(1), (2).

1

1       4.  The Defendant PETALUMA ELECTRIC, INC., a California Corporation, is an

2    employer as defined in 29 U.S.C. Section 1002(5). The Defendants were at all times mentioned

3    herein and now are authorized to do business in the State of California, and further, that they

4    are now authorized to do business and are actually doing business in the County of Sonoma,

5    State of California.

6       5.  At all times material hereto, there have been in full force and effect collective

7    bargaining agreements covering the wages, hours and conditions of employment of certain

8    employees of the Defendants.  True and correct copies of the executed signature page and

9    collective bargaining agreement are attached hereto and incorporated herein by reference as

10   Exhibit A.

11      6.  By its terms, the aforementioned collective bargaining agreement requires the

12   Defendants to make payments to the Funds for each hour worked by employees covered by said

13   collective bargaining agreement.  The agreement further provides that such payments are to be

14   made not later than the 15th day of each month following the month for which payment is made.

15      7. The aforementioned collective bargaining agreement also provides that the Defendant

16   will abide by the terms of the Trust documents establishing the Funds, as well as the rules and

17   regulations adopted by the trustees.

18      8.  In accordance with the trust documents and rules and regulations of the Funds, as

19   adopted by the trustees as well as the terms of the collective bargaining agreement, liquidated

20   damages are assessed on late payments at the rate of 10% of the amount due if the payment is

21   not received by the 15th of the month following the month incurred.

22      9.  The aforementioned collective bargaining agreement further provides that if legal

23   action must be taken to recover amounts due the Funds, the Defendant will pay the actual and

24   reasonable attorney's fees incurred by the Funds, and all court costs.  29 U.S.C. Section 1132

25   also requires the Defendant to pay such fees and costs.

26      10.  Pursuant to Article V, Section 5.21, of the Redwood Empire Electrical Workers

27   Pension trust agreement attached hereto as Exhibit "B," defendant PETALUMA ELECTRIC,

28   INC., a California Corporation, has an obligation to make books and records available for

COMPLAINT

periodic audits thereto in order to determine the compliance of the defendant PETALUMA ELECTRIC, INC., a California Corporation, with its agreement regarding the payment of fringe benefit contributions. That section states in pertinent part:

"(a) The Board shall have the power to require any Employer, and an Employer when so required shall furnish to the Board such information and reports as they may require in the performance of their duties under this Trust Agreement. The Trustees, or any authorized agent or representatives of the Board, shall have the right at all reasonable times during business hours to enter upon the premises of the Employers relating to the hours and wages of Employees as may be necessary to permit the Board to determine whether said Employers are making full payment to the Fund of the amounts required by the aforementioned Collective Bargaining Agreement or by a Subscription Agreement.

(b) The acceptance by the Board of any contributions shall not be an admission of the accuracy or sufficiency of the amount of such contributions, and the Board shall be entitled at any time to question the sufficiency of the amount thereof and/or the Board may, from time to time, cause an audit of the records of the Employer to be made by a Certified Public Accountant or by a Public Accountant selected by said Board and, if the statements of contributions due or contributions previously submitted by the Employer to said Board, or if the contributions previously made by said Employer to said Fund, shall be found to be less than the amount properly shown to be due by such an audit, and such deficiency shall be an amount exceeding ten percent (10%) of the total contributions due for the period of such an audit, the Employers shall immediately pay the cost of such audit as well as the additional contributions therein shown to be payable by the Employer to the Fund. Otherwise, the cost of such audit shall be paid by the Board.

(c) The employer shall keep safe and intact all of the Employer's books, records, and other data, which in any way bear upon or are required to establish in detail the amount of contributions due to the Fund for a period of four years from the date due, of such contributions and shall, upon request of the Board, make the same available to the accountant selected as hereinabove provided for examination at any time during said four year period."

11. On or about August 10, 2006, the Trustees, through their agents, requested that defendant PETALUMA ELECTRIC, INC., a California Corporation, comply with the above referenced agreements by providing transmittals showing the amounts due to the Trust Funds.

12. The Defendant PETALUMA ELECTRIC, INC., a California Corporation, has failed and refused, and continues to fail and refuse to provide said records as requested by the plaintiffs. Such failure and refusal constitutes a breach of the above referenced agreements.

3

COMPLAINT

13. The plaintiffs are informed and believe, and on such information and believe allege, that defendant PETALUMA ELECTRIC, INC., a California Corporation, has failed to submit fringe benefit contributions as required under the above referenced agreements on behalf of the defendant's covered employees. The exact amount of said delinquency in payment of fringe benefits is not presently known to the plaintiffs, who will amend this complaint when the exact amount becomes known.

14. Article V, Section 5.23, of the above referenced agreement provides that, in the event suit is instituted to enforce provisions of the trust agreements, defendants shall pay costs and reasonable attorney's fees. It has become necessary for the plaintiffs to employ Sue Campbell, attorney at law, as their attorney to prosecute the within action. If this lawsuit proceeds to default judgment, the attorney's fees shall be according to court schedule; if the matter should proceed to trial a reasonable fee for the attorney's services herein shall be according to proof.

15. Plaintiffs' actual attorney's fees and costs will not be known until after this matter is concluded.

WHEREFORE, Plaintiffs pray this Court:

1. For an Order compelling the defendants to submit books and records for an audit as may be necessary for the trustees to determine compliance with the above referenced agreements;

2. For an accounting;

3. For damages in an amount which is not presently known to the plaintiffs, who will amend this complaint when the exact amount of said damages becomes known;

4. Award to Plaintiffs such other relief as this Court shall deem appropriate.

Dated this _____ day of February 2007

SUE CAMPBELL
Attorney for Plaintiffs

4

## AGREEMENT

Agreement by and between the Redwood Empire Chapter of the National Electrical Contractors Association, Incorporated, and Local Union No. 551, International Brotherhood of Electrical Workers.

It shall apply to all firms who sign a Letter of Assent to be bound by this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Redwood Empire Chapter of the National Electrical Contractors Association Incorporated, and the term "Union" shall mean Local Union 551, International Brotherhood of Electrical Workers.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## SCOPE

Employees employed under the terms of this Agreement shall do all electrical construction, fabrication, installation, or erection work, and all electrical maintenance thereof; including the moving, lifting, and placing electric motors, generators, materials and equipment on the jobsite, and the final running tests thereof. This shall include all permanent and temporary electric lighting, heating, and power, and all photovoltaic, electronic communications systems, electric and electronic controls, and control circuits, and necessary conduits and raceways. This shall include operation of all power driven tools and equipment used for these installations.

All work of joining, splicing, and insulating, and the placing of all flameproof covering, where wiped lead joints are necessary, shall be performed by a cable splicer. Journeymen only shall be used in assisting cable splicers. Cable splicers shall not be required to work on wires or cables when difference in potential is over three hundred (300) volts between any two (2) conductors, or between any conductor and ground, unless assisted by another Journeyman. In no case shall cable splicers be required to work on energized cables carrying in excess of four hundred and forty (440) volts.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the public. Progress in industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace and by adjusting any differences by rational common-sense methods. Now therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

# ARTICLE I
## EFFECTIVE DATE - CHANGES
## GRIEVANCES - DISPUTES

**Section 1.01: Effective Date**

This Agreement shall take effect **June 1, 2005** and shall remain in effect until **May 31, 2008**, unless otherwise specifically provided herein. It shall continue in effect from year to year thereafter, from June 1, through May 31, of each year unless changed or terminated in the way later provided herein.

**Section 1.02: Changes**

(a) Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement including this Article shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

(e) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**Section 1.03: Change – Supplement**

This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such changes or supplement agreed upon shall be reduced in writing, signed by the parties hereto and

trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6.500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman.

An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

**Section 5.14: Graduating Apprentices – License – College Credit**
Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this Agreement.

**Section 5.15: Local Joint Apprenticeship Training Trust**
The parties to this Agreement shall be bound by the Local Joint Apprenticeship Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Section 5.16: JATC Contribution Rate**
All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the local apprenticeship and training trust agreement. The current contribution rate is $0.60 per hour for each hour worked. This sum shall be due to Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

# ARTICLE VI
## FRINGE BENEFITS

**Section 6.01: NEBF**
It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International

Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

An individual Employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

**Section 6.02: Health and Welfare**
The individual Employer shall contribute and forward monthly to the Redwood Empire Electrical Workers' Health and Welfare Trust Fund an amount equal to $7.18 for each hour worked, which s/he is obligated to pay to the employees in this bargaining unit, and a completed payroll report prescribed by the Trustees. The payment and payroll report shall be mailed to reach the Trustees or their designated agent not later than 15 calendar days following the end of each calendar month. The individual Employer hereby accepts, and agrees to be bound by, the Redwood Empire Electrical Workers' Health and Welfare Agreement and Trust. *Reference Section 3.05(b) and Wage/Benefit Schedules

**Section 6.03: Pension – Standard Contribution**
The individual Employer shall contribute and forward monthly to the Redwood Empire Electrical Workers' Pension Trust Fund an amount equal to the approved pension classification level for each hour worked, which s/he is obligated to pay to the employees in this bargaining unit, and a completed payroll report prescribed by the Trustees. The payment and payroll report shall be mailed to reach the Trustees or their designated agent not later than 15 calendar days following the end of each calendar

month. The individual Employer hereby accepts, and agrees to be bound by, the Redwood Empire Electrical Workers' Pension Agreement and Trust.

**Pension Contribution Classifications**

There shall be six classifications of employees under this Plan. Classification is based upon industry seniority under the Collective Bargaining Agreement, and the attainment of advanced levels of experience at the trade. The terms and conditions of this Agreement shall be applied in accordance with attained classifications. Applications for classification designations shall be submitted to the Union and classification designations granted by the Union's Executive Board upon verification that the applicant has attained the requisite experience as outlined below:

CLASS I:      Class I Employees shall include all second, third, fourth, and fifth year Apprentices.

CLASS II:     Class II Employees shall consist of Employees who have performed less than three years' work at the trade at the Journeyman level, or above. Traveling Journeymen shall be presumed to qualify for Class II status only, unless sufficient proof of the requisite experience for Class III through VI is presented at the time of initial dispatch.

CLASS III:    Class III Employees shall consist of Employees who have performed at least three years' of work at the Journeyman level or above.

CLASS IV:     Class IV Employees shall consist of employees who have performed at least four years' of work at the Journeyman level or above.

CLASS V:      Class V Employees shall consist of employees who have performed at least five years' of work at the Journeyman level or above

CLASS VI:     Class VI Employees shall consist of employees who have performed at least six years' of work at the Journeyman level or above.

Each Employee shall submit to the Local Union before October 1st of each year any classification change request. Notification shall be made on an approved form and in accordance with the rules and regulations jointly adopted and approved by the Union and the Chapter.

Upon notification by the Union to the Employer of an approved classification change, the Employer shall pay wages and fringe contributions at the approved classification level until and unless notified by the Union, in writing, of a classification change.

In no event, however, shall a classification change be implemented except by proper notification, and no more than one classification change may be effected annually and shall be effective on December 1st.

Contributions required to be made on behalf of each classification shall be as follows:

| Class | Amount |
|-------|--------|
| Class I | $2.00 |
| Class II | $4.00 |
| Class III | $5.00 |
| Class IV | $6.00 |
| Class V | $7.00 |
| Class VI | $8.00 |

In no event shall the contribution levels outlined above taken together with any other defined contribution or defined benefit plan maintained by the Employer for these classification of Employees exceed the maximum limitations on annual additions contained in Internal Revenue Code §415. In the event it is determined any annual addition for any employee exceeds the maximum limitation contained in §415, the Chapter and Union will meet and confer for the purposes of reaching an agreement to limit further contributions on behalf of such employee to assure that the maximum limitation is not exceeded.

**Section 6.07(a):  Fringe Benefit Remedies**

The failure of an individual Employer to comply with the provision of Section 6.01 through 6.06 shall also constitute a breach of this labor agreement. As a remedy for such a violation, the Labor-Management Committee and/or the Council on Industrial Relations for the Electrical Contracting Industry, as the case may be, are empowered, at the request of the Union, to require an Employer to pay into the affected Joint Trust Funds established under this Agreement any delinquent contribution to such funds which have resulted from the violation.

**Section 6.07(b):  Fringe Benefit Remedies**

If, as the result of violations of this Section, it is necessary for the Union and/or the Trustees of the Joint Trust Funds to institute court action to enforce an award rendered in accordance with sub-section (a) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or Fund Trustees, plus the costs of litigation which have resulted from the bringing of such court action.

# ARTICLE VII
## NATIONAL ELECTRICAL INDUSTRY FUND
### NEIF

**Section 7.01:  Contribution Rate**

Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll as determined by each local Chapter and approved by the Trustees, with the following exclusions:

1.  Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year but not exceeding 150,000 man-hours.
2.  One hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages including overtime paid with respect to all hours worked by all classes of electrical labor for which a rate is establish in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

# ARTICLE VIII
## LOCAL LABOR-MANAGEMENT COOPERATION COMMITTEE
### LMCC

**Section 8.01:  Definition**

The parties agree to participate in a Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. §186(c)(9).  The purposes of this Fund include the following:

1.  to improve communications between representatives of Labor and Management;
2.  to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

3.  to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4.  to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
5.  to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;
6.  to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
7.  to engage in public education and other programs to expand the economic development of the electrical construction industry;
8.  to enhance the involvement of workers in making decisions that affect their working lives; and,
9.  to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

**Section 8.02:  Agreement – Trust**

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust and any amendments thereto, and any other of its governing documents.  Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the LMCC, as provided in said Agreement and Declaration of Trust.

**Section 8:03:  Contribution Rate**

Each Employer shall contribute $0.30 per hour for each hour worked. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  The Redwood Empire Chapter, NECA, or its designee, shall be the collection agent for this fund.

**Section 8:04:  Compliance**

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance.  In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.  The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

# ARTICLE IX
## NATIONAL LABOR-MANAGEMENT COOPERATION COMMITTEE
### (NLMCC)

**Section 9.01: Parties to Agreement**

The parties agree to participate in the NECA/IBEW National Labor-Management Cooperation fund, under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. §186(c)(9). The purpose of this Fund includes the following:

1. to improve communication between representatives of labor and management;
2. to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organization effectiveness;
3. to assist worker and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4. to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
5. to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;
6. to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;
7. to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
8. to engage in public education and other programs to expand the economic development of the electrical construction industry;
9. to enhance the involvement of workers in making decisions that affect their working lives; and
10. to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

**Section 9.02: Agreement and Declaration of Trust**

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereof and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration Trust.

**Section 9.03: Contribution Rate**

Each employer shall contribute one cent per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Redwood Empire Chapter, NECA, or its designee shall be the collection agent for this Fund.

**Section 9.04: Remedy**

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XI

### SUBSTANCE ABUSE

**Section 11.01: Substance Abuse**

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles, and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## SUPPLEMENTAL TUNNEL AGREEMENT

**Definition:** This Supplemental Tunnel Agreement entered into this first day of July 1975, between Redwood Empire Chapter of the National Electrical Contractors Association, hereinafter referred to as the Employer and Local Union No. 551 of the International Brotherhood of Electrical Workers, hereinafter referred to as the Union.

This Agreement is a supplement to the basic Inside Wireman's Agreement between the parties hereto dated July 1, 1975, and hereinafter referred to as the Inside Wireman's Agreement. It is the desire of the parties hereto negotiate a supplement to the current Inside Wireman's Agreement to provide for conditions governing the tunnel construction.

This supplement shall take effect July 1, 1975 and run currently with the current Inside Wireman's Agreement. All Articles of the current Inside Wireman's Agreement shall become part of this Supplement Agreement covering tunnel construction unless those conditions are specifically modified by this Supplement.

**Section 1:** The following shall be a minimum rate of wages for work performed in any uncompleted tunnel or shaft:

| | |
|---|---|
| **Journeyman** | **100% of rate, plus $.50 per/hr** |
| **Foreman Wireman** | **112.5% of Journeyman rate, plus $.50 per/hr** |
| **General Foreman** | **125% of Journeyman rate plus $.50 per/hr** |
| **Journeyman Wireman** | |
| **when cable splicing** | **110% of Journeyman rate plus $.50 per/hr** |
| **Apprentice** | **100% of their applicable rate plus $.50 per/hr** |

Apprentice shall work under the rules of the Joint Apprenticeship Committee.

**Section 2:** Shift work will be permissible, as set forth in ARTICLE III, Section 3.12, of the Inside Agreement.

(a) Double regular shift hourly rate of pay shall be paid for work performed on Saturday, Sunday and the following holidays: **New Year's Day, Martin Luther King Day, Presidents' Day, Memorial Day, Fourth of July, Labor Day, Veterans' Day, Thanksgiving Day and the following Friday, and Christmas Day**, or days celebrated as such. Any of the above designated holidays occurring Saturday shall be observed the preceding Friday. Any holidays occurring on Sunday shall be observed on the following Monday.

**Section 3:**     CONDITIONS OF WORK

(a) Whenever there is electrical work to be done in or about a tunnel, shaft or adit, it shall be done by the electricians receiving the established rate of pay for a minimum of two (2) hours.

(b) Tunnel electricians shall take orders from assigned supervision and cooperate with shift supervision.

(c) Work on slopes or shafts where ladders or steps are used shall not be considered as "high time."

(d) Employees shall not be required to enter the heading after a blast until all requirements of the State Safety Codes have been complied with.

(e) Compensation for travel within tunnels when the shifts are scheduled to start and stop at the heading:

| Distance from Entrance to Place of Work | Allowance for Travel Time |
|---|---|
| (1) up to 5,000 feet | an allowance equal to 1/4 hour at the straight time rate doubled. |
| (2) 5,000 to 15,000-feet | an allowance equal to 1/2 hour at the straight time rate doubled. |
| (3) 15,000 feet and beyond | an allowance equal to 1 hour at the straight time rate doubled. |

(f) All travel time or allowances outside the regular working hours shall be computed using the regular day shift hourly rate of pay.

(g) The Employer shall furnish all rubber and protective clothing without charge when required by working conditions. Employee shall be responsible for clothing and rubber goods issued to him/her and shall return the same to Employer at the time of termination.

(h) Employees shall not be required to work more than five (5) hours without a meal.

**Section 4:**     All electrical work being performed under the terms of this supplement shall be governed by "Tunnel Safety Orders" and "Electrical Safety Orders" issued by the Division of Industrial Safety; and when applicable "General Order No. 95", issued by State Public Utilities Commission.

### SCHEDULE A:
## WAGE RATES AND BENEFITS
## SONOMA, LAKE, MARIN & MENDOCINO COUNTIES
## EFFECTIVE JUNE 1, 2005 THROUGH MAY 31, 2008

**(BASE)**

|  | Class 1 | Class II | Class III | Class IV | Class V | Class VI |
|---|---|---|---|---|---|---|
| Pension Rate | $2.00/hr | $4.00/hr | $5.00/hr | $6.00/hr | $7.00/hr | $8.00/hr |
| Journeyman Wireman | $37.23 | $35.23 | $34.23 | $33.23 | $32.23 | $31.23 |
| Foreman Wireman | $41.63 | $39.63 | $38.63 | $37.63 | $36.63 | $35.63 |
| General Foreman | $46.04 | $44.04 | $43.04 | $42.04 | $41.04 | $40.04 |
| Journeyman Cable Splicer | $40.75 | $38.75 | $37.75 | $36.75 | $35.75 | $34.75 |

**\*\*ALL OVERTIME (EXCLUDING APPRENTICES) IS COMPUTED USING THE BASE RATE (CLASS II) WAGE & PENSION\*\***

Journeyman Wireman Example: Time and one half is $52.85 with *$4.00/hr pension*, double time is $70.46 with *$4.00/hr pension*.

Foreman Wireman Example:    Time and one half is $59.45 with *$4.00/hr pension*, double time is $79.26 with  *$4.00/hr pension*.

**APPRENTICES:** Apprentice pay rates are computed on Class 1 Journeyman rate

| | |
|---|---|
| 40% - $14.89 | NO PENSION PAID ON FIRST YEAR APPRENTICES |
| 45% - $16.75 | 2nd through 5th year apprentices are paid Class 1, $2.00/hr pension |
| 50% - $18.62 | |
| 55% - $20.48 | Overtime for apprentices is paid at time and one half or double time their |
| 60% - $22.34 | actual hourly rate with the Class I pension ($2.00). |
| 65% - $24.20 | |
| 70% - $26.06 | |
| 75% - $27.92 | |
| 80% - $29.78 | |
| 85% - $31.65 | |

### FRINGE BENEFIT CONTRIBUTIONS:

| | |
|---|---|
| Health & Welfare | $7.18/hr |
| J.A.T.C.(ApprenticeTraining) | $0.60/hr |
| National Pension | 3% of gross wage |
| Labor/Mgmt Fund | $0.30/hr |
| Pension (Variable Pension $2.00, $4.00, $5.00, $6.00, $7.00 or $8.00 per hour) | |

Travel Pay/Subsistence:  $30.00 per day Geysers

### SCHEDULED INCREASES
June 1, 2006:  $2.75 wages - $0.25 Health & Welfare
June 1, 2007:  $2.75 wages - $0.25 Health & Welfare

### WIREMAN CLASSIFICATION RATES
General Foreman.....125% of Journeyman Wireman Rate
Foreman .................112.5% of Journeyman Wireman Rate
Cable Splicing.........110% of Journeyman Wireman Rate

## SCHEDULE I-A:
### WAGE RATES AND BENEFITS
### HUMBOLDT & DEL NORTE COUNTIES
### EFFECTIVE JUNE 1, 2005 THROUGH MAY 31, 2008

|  | (BASE) | | | | | |
|---|---|---|---|---|---|---|
|  | Class 1 | Class II | Class III | Class IV | Class V | Class VI |
| Pension Rate | $2.00/hr | $4.00/hr | $5.00/hr | $6.00/hr | $7.00/hr | $8.00/hr |
| Journeyman Wireman.............$30.18 | | $28.18 | $27.18 | $26.18 | $25.18 | $24.18 |
| Foreman Wireman .................$33.70 | | $31.70 | $30.70 | $29.70 | $28.70 | $27.70 |
| General Foreman ...................$37.23 | | $35.23 | $34.23 | $33.23 | $32.23 | $31.23 |
| Journeyman Cable Splicer ......$33.00 | | $31.00 | $30.00 | $29.00 | $28.00 | $27.00 |

## **ALL OVERTIME (EXCLUDING APPRENTICES) IS COMPUTED USING THE BASE RATE (CLASS II) WAGE & PENSION**

Journeyman Wireman Example: Time and one half is $42.28 with *$4.00/hr pension*, double time is $56.37 with *$4.00/hr pension*.

Foreman Wireman Example: Time and one half is $47.55 with *$4.00 hr/ pension*, double time is $63.40 with *$4.00/hr pension*

**APPRENTICES:** Apprentice pay rates are computed on Class 1 Journeyman rate

40% - $12.07     NO PENSION PAID ON FIRST YEAR APPRENTICES

45% - $13.58     2nd through 5th year are paid Class I, $2.00/hr pension

50% - $15.09

55% - $16.60     Overtime for apprentices is paid at time and one half or double time their

60% - $18.11     actual hourly rate with the Class I pension ($2.00).

65% - $19.62

70% - $21.13

75% - $22.64

80% - $24.14

85% - $25.65

### FRINGE BENEFIT CONTRIBUTIONS:

| | |
|---|---|
| Health & Welfare | $7.18/hr |
| J.A.T.C.(ApprenticeTraining) | $0.60/hr |
| National Pension | 3% of gross wage |
| Labor/Mgmt Fund | $0.30/hr ' |
| Pension (Variable Pension $2.00, $4.00, $5.00, $6.00, $7.00 or $8.00 per hour) | |

### SCHEDULED INCREASES

Journeyman base wage will equal 80% of Marin, Sonoma, Lake, and Mendocino County base wage.

June 1, 2006:  $2.20 wages - $0.25 Health & Welfare

June 1, 2007:  $2.20 wages - $0.25 Health & Welfare

**DEDUCTION FROM PAYCHECK: 4.25 % OF GROSS WAGE FOR WORK ASSESSMENT. APPLIES TO ANYONE WORKING IN AREA.  APPRENTICE WORK ASSESSMENT IS 2.25% OF GROSS WAGE.**

## SEPRABILITY CLAUSE

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

### GENDER LANGUAGE

Whenever the male gender is used in this Agreement, the female gender is also intended.

## SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW©

Signed:
**Redwood Empire Chapter**
**National Electrical Contractors Association**

Signed:
**International Brotherhood of**
**Electrical Workers**
**Local Union No. #551**

By_____

By_____

**Anisa M. Thomsen**
**Executive Director**

**Jack A. Buckhorn**
**Business Manager**

## LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize [1] __REDWOOD EMPIRE CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION__ as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved [2] __INSIDE__ labor agreement between the

[1] __REDWOOD EMPIRE CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION__ and Local Union [3] __551__, IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] __1st__ day of

__NOVEMBER__ __2004__. It shall remain in effect until terminated by the undersigned employer giving written notice to the __REDWOOD EMPIRE CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION__ and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

## SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

[7] __Petaluma Electric Inc.__
Name of Firm

__108 Jessie Lane / P.O. Box 751089__
Street Address/P.O. Box Number

__Petaluma, CA 94952__
City, State (Abbr.) Zip Code

[4] Federal Employer Identification No.: __68-0482312__

| SIGNED FOR THE EMPLOYER | SIGNED FOR THE UNION [3] __551__ IBEW |
|---|---|
| BY [5] _(original signature)_ | BY _(original signature)_ |
| NAME [6] __Bill Jenkins__ | NAME [6] __JACK A BUCKHORN__ |
| TITLE/DATE __Owner 10/8/04__ | TITLE/DATE __BUSINESS MANAGER 10/13/04__ |

### INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[7] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[4] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[5] SIGNATURES
[6] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

# RESTATED AGREEMENT AND DECLARATION OF TRUST

## REDWOOD EMPIRE ELECTRICAL WORKERS PENSION TRUST

THIS AGREEMENT, made and entered into this _8th_ day of _June_ 2005 amends and restates the provisions of that Agreement and Declaration of Trust Relative to the Redwood Empire Electrical Workers Pension Trust as amended, last restated on December 31, 1976, made and entered into by and between the Redwood Empire Chapter, National Electrical Contractors Association, Inc., hereinafter designated the "Association", and Local Union No. 551, International Brotherhood of Electrical Workers, hereinafter designated the "Union".

## WITNESSETH:

WHEREAS, the Association and the Union herein have from time to time executed a collective bargaining agreement providing for the payment of employer contributions to a Pension Fund for the employees covered by said Agreement.

NOW THEREFORE, the parties agree as follows:

## ARTICLE I

## TRUSTEES

Section 1.1.   The term "Board of Trustees" or "Board" means the Board of Trustees established under this Trust Agreement.

Section 1.2.   The term "Collective Bargaining Agreement" means any written agreement requiring contributions to this Fund by and between the Association or any Individual Employer and the Union, including any and all extensions or renewals thereof.

#631154

1

Section 1.3.    The term "Employee" means an employee who performs work which is covered by a Collective Bargaining Agreement requiring contributions to this Fund. The term "Employee" shall also include regular paid employees of the Union and other jointly trusteed employee benefit funds on whose behalf contributions are made to the Pension Fund under such conditions and manner as are specified by the Board of Trustees.

Section 1.4.    The term "Employer" as used herein shall mean any member of the Association or any Individual Employer who is bound by the Collective Bargaining Agreement or any other employer association or any individual employer who is bound by a Collective Bargaining Agreement requiring payment into a local pension plan and in accordance therewith assents and consents to participate in and contribute to the Fund herein provided for, and who, in fact, makes one or more contributions to the Pension Fund.    The terms "Employer" or "Individual Employer" shall also include the Union or other Association and Union jointly trusteed employee benefit fund which makes contributions to the Pension Fund on behalf of its employees under such conditions and manner as are specified by the Board of Trustees.

Section 1.5.    The term "Pension Fund" or "Fund" means the trust created and established under this Trust Agreement and the funds held by such trust.

Section 1.6.    The terms "Pension Plan" or "Plan" mean the plan or plans relating to the distribution of pension or retirement benefits as adopted by the Board of Trustees, including any amendments, alterations or modifications thereof.

Section 1.7.    The term "Subscription Agreement" means an agreement between an employer and the Board to participate in this Fund.

2

of any Trustee, or any successor to any of them, a successor Trustee shall be selected by the Union or the Association, depending upon which group has suffered the loss of a Trustee. Each Trustee shall act for the full term of this Trust Agreement, or any extension or renewal thereof, or until his death, resignation or removal by the Association or Union that said Trustee represents, or as otherwise provided herein.

Section 4.8.    No vacancy or vacancies in the office of Trustees shall impair the power of the remaining Trustees to administer the affairs of the Trust, elsewhere provided.

Section 4.9.    Trustees shall be entitled to receive reimbursement for all actual and reasonable expenses incurred in such attendance at the Board of Trustees meetings as well as those incurred in the performance of their duties as Trustees.

## ARTICLE V

### TRUSTEE DUTIES AND POWERS

Section 5.1.    The Board of Trustees shall carry out the purpose of this Trust Agreement, and shall administer the Fund created hereby and the Pension Plan.

Section 5.2.    All moneys received by the Trustees under any provision of this Trust Agreement shall be deposited by the Trustees in any bank or banks or savings and loan association as they may designate.

Section 5.3.    All checks, drafts, vouchers or other withdrawal of funds from the account or accounts of the Fund shall be countersigned by at least one Employer Trustee and at least one Employee Trustee as the Board of Trustees shall designate.

Section 5.4.    The Board of Trustees shall provide at the expense of the Fund, as permitted by applicable law, insurance and bonding protection for the Fund and for each of the

8

Trustees and all other persons whom they may authorize to handle, deal with or draw upon monies of the Fund for any purpose whatsoever. The protection shall be from such companies as the Trustees shall determine.

Section 5.5.    An annual audit prepared by a Certified Public Accountant shall be made of the Fund; a statement the results of which shall be available for inspection as required by law.

Section 5.6.    It is the intent and purpose of the parties that contributions to the Fund shall be at all times deductible by the Individual Employers for income tax purposes in the taxable year when paid, that benefits to Employees, retired Employees or other beneficiaries shall be at all times taxable to them, if at all, only in the year such benefits are distributed or made available to such Employees, retired Employees or other beneficiaries, and that the Fund shall be at all times tax exempt. The Board of Trustees shall do whatever may be necessary to continue the tax qualification of the Trust and Pension Plan. If any administrative or judicial ruling holds that any provision of this Trust Agreement or of the Plan prevents or defeats the qualification of the Fund as herein provided or any other objective stated in this Section, either under presently existing laws or regulations or under any laws or regulations hereafter enacted or adopted, or if for any reason it shall be necessary or desirable to amend this Trust Agreement or the Plan to accomplish any such objective, the parties will forthwith enter into negotiations with regard to the amendment of this Trust Agreement or the Plan in such respects as may be necessary to accomplish such qualification or other objective, consistent with the other objectives and purposes of this agreement, and any such amendment shall be effective, insofar as practicable, as of the effective date of this Trust Agreement or of the Plan or as of the effective date of any such law or regulation hereafter enacted or adopted as the case may require.

9

Section 5.7.    The Board has adopted a Pension Plan providing for the payment of benefits on the retirement and/or the disability or death after retirement of Employees.    The Board may amend, alter or otherwise change said Plan from time to time in its sole discretion.

Section 5.8.    The Board shall administer and provide said Plan for the sole and exclusive benefit of Employees and their beneficiaries.

Section 5.9.    The Board shall establish and maintain a funding policy for the Plan and benefits provided for thereunder.

Section 5.10.    The Board at the expense of the Fund shall be empowered to employ such persons as may be necessary to administer the Fund and the Plan, including legal counsel, accountants, insurance consultants, fund consultants, administrators, actuaries, investment counselors and any other expert and/or clerical assistants the Trustees in their discretion may deem necessary or appropriate, and to pay or cause to be paid compensation and expenses in connection therewith.

Section 5.11.    The Board may pay out of the Fund such sums as may be necessary for the purposes stated in Section 2.3 herein, and such sums as may be necessary to administer the Fund, including all costs incurred in establishing the same.

Section 5.12.    The Board may collect, receive, hold and disburse, through any Co-Trustee or Custodian, if such Co-Trustee or Custodian is selected, all sums of money which are payable to the Fund.

Section 5.13.    The Board may establish and accumulate such reserve funds as the Board in its discretion deem necessary or desirable for the proper performance of this Trust Agreement and the Plan.

10

Section 5.14.  The Board may pay or provide for the payment of premiums on policies or group insurance, or other such payments necessary to provide the benefits adopted under the Plan.  The policies of insurance may contain such provisions and be contracted for in the name of and issued to the Trustees.

Section 5.15.  The Board may establish an administrative office which shall be located within the area in which the parties to the Collective Bargaining Agreement operate; to lease, purchase or otherwise secure premises necessary for such purposes; to purchase, lease or otherwise acquire furniture, fixtures, equipment and supplies necessary or desirable for the maintenance of such office and the administration of the Fund and the Plan.

Section 5.16.  If no investment manager is designated and appointed by the Board of Trustees, the Board of Trustees shall invest and reinvest or cause to be invested and reinvested the assets of the fund, as prudent Trustees and in accordance with all applicable laws.  Investments may be made with a bank or other fiduciary to the fullest extent permitted by law.

No indicia of ownership shall be maintained outside the jurisdiction of the district courts of the United States except to the extent permitted by law.

Section 5.17.  The Board shall have the following powers and authority and limitations in the administration and investment of the Fund:

(a)    To purchase, or subscribe for any securities or other property and to retain the same in trust.

(b)    To sell, exchange, convey, transfer or otherwise dispose of any securities or other property held by them, by private contract or at public auction.  No person dealing with

11

#631154

the Board shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition.

(c)    To vote upon any stocks, bonds or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights, or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stock, bonds, securities or other property held as part of the Fund.

Section 5.18.    The Board is empowered to raise money for the purposes of the Fund in such amount, and upon such terms and conditions as the Board shall deem advisable; and for any sum so borrowed, to issue its promissory note as Trustees, and to secure the payment thereof by pledging all, or any part of the Fund; and no person lending money to the Trustees shall be bound to see to the application of the money lent or to inquire into the validity, expediency or propriety of any such borrowing.

Section 5.19.    The Board through its designated members make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

Section 5.20.    The Board is authorized to settle, compromise, submit to arbitration any claims, debts or damages due or owing to or from the Fund, to commence or defend suits or legal or administrative proceedings, and to represent the Fund in all suits and legal end administrative proceedings..

12

Section 5.21.

(a)    The Board shall have the power to require any Employer, and an Employer when so required shall furnish to the Board such information and reports as they may require in the performance of their duties under this Trust Agreement. The Trustees, or any authorized agent or representatives of the Board, shall have the right at all reasonable times during business hours to enter upon the premises of the Employers and to examine and copy such of the books, records, papers and reports of said Employers relating to the hours and wages of Employees as may be necessary to permit the Board to determine whether said Employers are making full payment to the Fund of the amounts required by the aforementioned Collective Bargaining Agreement or by a Subscription Agreement.

(b)    The acceptance by the Board of any contributions shall not be an admission of the accuracy or sufficiency of the amount of such contributions, and the Board shall be entitled at any time to question the sufficiency of the amount thereof and/or the Board may, from time to time, cause an audit of the records of the Employer to be made by a Certified Public Accountant or by a Public Accountant selected by said Board and, if the statements of contributions due or contributions previously submitted by the Employer to said Board, or if the contributions previously made by said Employer to said Fund, shall be found to be less than the amount properly shown to be due by such audit, and such deficiency shall be an amount exceeding ten percent (10%) of the total contributions due for the period of such audit, the Employers shall immediately pay the cost of such audit as well as the additional contributions therein shown to be payable by the Employer to the Fund. Otherwise, the cost of such audit shall be paid by the Board.

#631154

(c)    The Employer shall keep safe and intact all of the Employer's books, records and other data, which in any way bear upon or are required to establish in detail the amount of contributions due to the Fund for a period of four years from the date due, of such contributions and shall, upon request of the Board, make the same available to the accountant selected as hereinabove provided for examination at any time during said four year period.

(d)    In the event an Employer or Employers join with another employer or employers who are not parties to this Trust Agreement, in a joint venture or by any other means or method to perform work covered by the classifications within the Collective Bargaining Agreement, such Employer or Employers shall be liable to make the payments required to be made into the Fund as if such work was his or its individual operation until such joint operation shall become an Employer for the purposes of this Trust Agreement.

Section 5.22.  (a)    Each contribution to the Fund shall be made promptly by the respective Employer and either shall be transmitted by mail and postmarked on or before the fifteenth (15th) day of the calendar month in which it becomes payable, or shall be received by the Fund on or before the twentieth (20th) day of the calendar month in which it becomes payable. The Board may change these due dates upon notice to Employers.  Any contribution not mailed or received when due shall be considered delinquent.

(b)    The Parties recognize and acknowledge that the regular and prompt payment of Employer contributions to the Fund is essential to the maintenance in effect of the Fund, and that it would be both difficult and impracticable to fix the actual damage to the Fund arising out of the failure of an Employer to make contributions in full when due.  Therefore, the amount of damages to the Fund resulting from any such failure shall be presumed as follows:

14

- For Employer contributions that are between one and five days delinquent, the amount of damage resulting from such failure shall be the sum of $350;

- For Employer contributions that are more than five days delinquent, the amount of damage resulting from such failure shall be the sum of $350 or 10% of the amount of the contribution or contributions due, whichever is greater, plus interest at the rate of 10% per annum on the amount of the contribution or contributions due; which amounts shall be due and payable to the Fund as liquidated damages and not as a penalty upon the date immediately following the date on which the contribution or contributions become delinquent and shall be in addition to said delinquent contribution or contributions.

(c)     If any Employer fails to make his or its contribution in full when due on three occasions within any twelve-month period, the Board may provide by resolution that thereafter during the twelve-month period immediately following such resolution such Employer shall make all required contributions so that they are received by the Fund on or before the tenth (10th) calendar day of the month when due or such other date as established by the Board.

(d)     In addition to any other remedy herein provided, a delinquent Employer shall be liable in damages to any Employee who is adversely affected by such Employer's delinquency in a sum equal to the value of benefits payable to and lost by such affected Employee. A delinquent Employer shall be liable to reimburse the Fund through the Trustees for the value of any delinquent benefits which may be made available by the Trustees to any Employee adversely affected by the failure of such delinquent Employer to make the

15

contributions required by the provisions of the Collective Bargaining Agreement and of this Trust Agreement.

Section 5.23. The Board may sue said delinquent Employer in a court of competent jurisdiction, recovering in said suit the delinquent payments and likewise a sum for reasonable attorneys fees as determined by said Court, along with costs of suit, which shall be deemed to include the cost of any audit necessary to determine the proper amount due to the Fund. The recovery of the delinquent payments in either case shall be for the benefit of the Fund. In the event the Board sues said delinquent Employer in a court of competent jurisdiction, the Board shall also be entitled to obtain, on behalf of the Fund, interest at the rate of 10% per annum on the unpaid delinquent contributions, together with an amount equal to 20% of the delinquent contribution or contributions.

Section 5.24. The Board is hereby authorized to formulate and promulgate any and all necessary rules and regulations to facilitate the proper functioning of this Fund, provided the same are not inconsistent with the terms hereof.

Section 5.25. The Board is empowered to verify claims for the payment of benefits; determine the manner of payments of benefits; decide all questions relating to eligibility, service credits, amount and kind of benefits and similar related questions in the administration of this Fund and the Plan in its sole discretion. No Employee, eligible dependent, beneficiary or other person shall have any right or claim to benefits under the Plan other than as specified in the rules of the Fund. If any person shall have a dispute with the Board as to eligibility, type, amount or duration of such benefits, the dispute shall be resolved by the Board under and pursuant to the Plan and this Trust Agreement, and its decision of the dispute shall be final and binding upon all parties thereto.

16

In the establishment and maintenance of the Plan, and in the execution, amendment and implementation of this Trust Agreement, the Union acts for and on behalf of the Employees and as their collective bargaining representative and agent, and every agreement or act of the Union in connection with the establishment, maintenance and operation of the Fund or the Plan shall be deemed to be and is the agreement or act of the Employee, or Employees concerned or affected by such agreement or action.

Section 5.26. The Board of Trustees is authorized to enter into reciprocal agreements with other pension trust funds covering Employees to which a Local Union of the International Brotherhood of Electrical Workers is a party for the exchange of the service credits and/or funds for the purpose of joint administration or providing continuity in the provision of pension benefits for Employees moving their permanent residences, or otherwise as the Trustees deem appropriate. The Board is authorized to pool the Trust Funds with the Trust Funds of other Employee Pension Trust Funds for the purpose of merging other Pension Trust Funds with this Fund; provided, however, such pooling or merger does not alter the purposes of this Fund as set forth in Section 2.3 hereof nor the powers and limitation of powers expressed in this instrument.

Section 5.27. The Board may delegate any of its ministerial powers or duties hereunder to an administrator or to any agent or Trustee.

Section 5.28. The Board shall prepare or cause to be prepared such reports, descriptions, summaries and other information as are or may be required by law or as the Board in its discretion deems necessary or advisable and to file and furnish such reports, descriptions, summaries and information to participants and their beneficiaries, Unions, Employers, the Trustees, or other persons or entities, including government agencies, as required by law.

#631154

Section 7.7.    Upon making such distribution, the Trustees shall be discharged from all obligations under the Trust Agreement and the Plan and no participant shall have any further right or claim therein.

## ARTICLE VIII

## MISCELLANEOUS

Section 8.1.    In the event that a vote of the Board upon any question should result in a deadlock, the Board shall agree on an impartial Arbitrator within six (6) days; in the event one cannot be so mutually selected, the U.S. District Court for the District where the Fund has its principal office shall be petitioned to appoint one. The decision of said Arbitrator shall be final and binding upon the Parties with respect to any issue specifically referred to him for decision.

After the selection of said Arbitrator, as aforesaid, Employee Trustees and Employer Trustees shall appear and present to said Arbitrator, at such time and place as he shall designate upon three (3) calendar days' written notice to each party and not more than seven (7) calendar days from his selection, as aforesaid all data and information that each party may wish to present relative to the issue in dispute. Said Arbitrator may elicit and act upon any knowledge or information independent of that furnished to him by the parties; hereto and within seven (7) calendar days after submission to him shall determine the matter in writing, a copy of which decision shall be transmitted to each of the parties thereto, which decision will be final, binding and conclusive upon both the Employee Trustees and the Employer Trustees and shall determine the issue in dispute. The parties may agree to a different time table than is specified above. The reasonable cost and expenses of the arbitration shall be paid by the Fund.

Section 8.2.    Neither the establishment of the fund hereby created, nor any modification thereof, nor the creation of any fund account, nor the payment of any benefits, shall be construed

24

as giving to any participant or other person any legal or equitable right against the Employer, or any officer or employee thereof, or the Trustee, except as herein provided. Under no circumstances shall the terms of employment of any Employee be modified or in anyway affected thereby.

Section 8.3.    Each Employee, Retired Employee or beneficiary under the Pension Plan is hereby restrained from selling, transferring, anticipating, assigning, hypothecating or otherwise disposing of his pension, prospective pension or any other right or interest under the Plan, and the Board shall not recognize, or be required to recognize, any such sale, transfer, anticipation, assignment, hypothecation or other disposition. Any such pension, prospective pension, right or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings to the fullest extent permissible by law.

Section 8.4.    This Trust Agreement shall be construed and administered according to applicable federal law and the laws of the State of California.

Section 8.5.    Whenever any words are used herein in the masculine gender they shall be construed as though they were also used in the feminine gender in all cases where they would so apply, and whenever any words are used therein in the singular form they shall be construed as though they were also used in the plural form in all cases where they would so apply.

Section 8.6.    In the event that any Section of this Trust Agreement, or any part thereof, is or becomes illegal or invalid, such illegality or invalidity shall not affect the remaining provisions of this Trust Agreement unless such illegality or invalidity prevents the Board from accomplishing the purpose of this Trust Agreement. In the event that any such illegality or

25

invalidity exists or occurs, the Parties hereto shall immediately make such amendment or amendments in the manner heretofore provided to this Trust Agreement as may be necessary to eliminate the illegality or invalidity.

Section 8.7.   The duties, responsibilities, rights and powers of any Corporate Co-Trustee or Custodian, if one is selected, shall be such as delegated to them by the Board, and the same shall be set forth in a contract between the Board and them, or either of them, as the case may be.

Section 8.8.   The Board has designated the Chairman of the Board of Trustees as agent for the service of legal process on the Board of Trustees.  Service may be made at the office located at 2525 Cleveland Avenue, Suite C, Santa Rosa, California 95403.

Executed this _____ day of _____, _____.

REDWOOD EMPIRE CHAPTER,
NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION,
INC.

By: _____

By: _____

LOCAL UNION NO. 551, of the
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS

By: _____

By: _____

#631154

## ACCEPTANCE OF OFFICE BY TRUSTEES

The undersigned hereby accept office as Trustees appointed pursuant to the foregoing Agreement and agree to act under and be subject to all of the terms and conditions of said Agreement. The undersigned hereby declare that they hold the Fund created by said Agreement in trust for the uses and purposes set forth in said Agreement.

EMPLOYEE TRUSTEES                                    EMPLOYER TRUSTEES

#631154

27

## SUBSCRIPTION AGREEMENT

## AND ACCEPTANCE

The undersigned Employer hereby acknowledges receipt of a copy of the foregoing restated agreement and declaration of trust relative to the REDWOOD EMPIRE ELECTRICAL WORKERS PENSION TRUST and hereby agrees to accept and be bound by the terms and provisions thereof and by any amendments thereto, and to make the contributions to the REDWOOD EMPIRE ELECTRICAL WORKERS PENSION TRUST as from time to time provided and to furnish the information and reports required thereby; and the undersigned Employer further agrees that the Employer Trustees thereunder appointed shall be and hereby are authorized and empowered to act as if appointed by the undersigned Employer and as his agents in carrying out their duties and responsibilities as set forth in said Trust Agreement.

DATED: _____

_____
(Firm Name)
A corporation, partnership or sole proprietorship
(circle whichever is appropriate)

By: _____

By: _____

28

#631154